No. 26-315
(Judge Somers)

---

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

---

STATE OF COLORADO, STATE OF MARYLAND, STATE OF MINNESOTA, STATE OF HAWAI'I, STATE OF MICHIGAN, STATE OF RHODE ISLAND,

Plaintiffs,

v.

THE UNITED STATES,
Defendant.

---

**REPLY IN SUPPORT OF DEFENDANT'S
CROSS-MOTION FOR SUMMARY JUDGMENT**

---

BRETT A. SHUMATE
Assistant Attorney General

PATRICIA M. McCARTHY
Director

MARTIN F. HOCKEY, JR.
Deputy Director

MATTHEW J. CARHART
Senior Trial Counsel
Commercial Litigation Branch
Civil Division, U.S. Department of Justice
PO Box 480, Ben Franklin Station
Washington, DC 20044
Tel:  (202) 307-0313
Email: Matthew.Carhart@usdoj.gov

August 11, 2026                    Attorneys for Defendant

## TABLE OF CONTENTS

INTRODUCTION ............................................................................................................1

ARGUMENT.................................................................................................................3

I.      The United States Is Entitled To Summary Judgment On Liability...........................3

        A. The Termination Provisions In Section 200.340—Including The "Agency Priorities" Provision—Were Incorporated By Reference Into The Grant Agreements ....................................................................................................................................3

        B.  Alternatively, Section 200.340's Termination Provisions Are Incorporated As A Matter of Law Via The *Christian* Doctrine ............................................................10

        C.  Should The Court Agree That Section 200.340 Was Incorporated Into The Agreements, The Court Should Enter Judgment As To Count I Of Plaintiffs' Complaint ..................................................................................................................12

II.     The United States Is Entitled To Summary Judgment With Respect To Plaintiffs' Alleged Damages.................................................................................................................13

        A.  Plaintiffs' View Of Their Expectation Interests Is Based Upon A Misunderstanding Of The Grant Agreements ...........................................................13

        B.  Even If Plaintiffs Are Correct About Their Expectation Interests, Their Damages Must Be Offset By The Costs Avoided As A Result Of The Terminations.............16

        C.  Plaintiffs' Damages—Which Seek Compensation For Purported Public Safety Benefits That Allegedly Would Have Resulted From The Grants—Are Speculative ....................................................................................................................................18

        D.  Plaintiffs Cannot Recover Any Consequential Damages Or Incidental Damages Apart From Those Compensable Under The Uniform Guidance............................20

CONCLUSION ...........................................................................................................20

# TABLE OF AUTHORITIES

Page(s)

*Cases*

*AT&T v. United States*,
177 F.3d 1368 (Fed. Cir. 1999) (en banc) ............................................................. 9

*Bell/Heery v. United States*,
739 F.3d 1324 (Fed. Cir. 2014) ............................................................................ 4

*Bennett v. Kentucky Dept. of Educ.*,
470 U.S. 656 (1985) .............................................................................................. 11

*Blue Tech Inc. v. United States*,
155 Fed. Cl. 229 (2021) ........................................................................................ 9

*Bluebonnet Sav. Bank, F.S.B. v. United States*,
339 F.3d 1341 (Fed. Cir. 2003) ............................................................................ 14

*Boaz Housing Authority v. United States*,
994 F.3d 1359 (Fed. Cir. 2021) ............................................................................ 16

*Bowman Constr. Co. v. United States*,
154 Fed. Cl. 127 (2021) ........................................................................................ 18

*Cross Petroleum v. United States*,
51 Fed. Cl. 549 (2002) .......................................................................................... 5

*Fortec Constructors v. United States*,
760 F.2d 1288 (Fed. Cir. 1985) ............................................................................ 9

*G. L. Christian and Assocs. v. United States*,
312 F.2d 418 (Ct. Cl. 1963) .................................................................................. 10, 11

*Geren v. Tecom, Inc.*,
566 F.3d 1037 (Fed. Cir. 2009) ............................................................................ 4

*Glendale Federal Bank, FSB v. United States*,
239 F.3d 1374 (Fed. Cir. 2001) ............................................................................ 18, 19

*Hoskins v. State of La.*,
273 So.3d 323 (La. App. Ct. 2019) ....................................................................... 14

*Marquette Univ. v. Kuali*,
584 F.Supp.3d 720 (E.D. Wis. 2022) .................................................................... 14-15, 15

*Metro. Transp. Auth. v. Duffy, 25-cv-1413*,
  2026 WL 588117 (S.D.N.Y. Mar. 3, 2026) ........................................................................ 6, 7

*New Jersey v. United States Office of Management and Budget, Civil Action No. 1:25-cv-11816-IT*,
  2026 WL 2069832 (D.Mass. July 17, 2026) ........................................................................ 7

*Newsom v. United States*,
  676 F.2d 647 (Ct. Cl. 1982) ........................................................................................... 9

*Patterson v. McLean Credit Union*,
  491 U.S. 164 (1989) ........................................................................................................ 12

*Pennhurst State Sch. & Hosp. v. Halderman*,
  451 U.S. 1 (1981) ............................................................................................................ 11

*Precision Pine & Timber, Inc. v. United States*,
  596 F.3d 817 (Fed. Cir. 2010) ......................................................................... 7, 8, 13, 20

*Public Housing Auth. Directors Assoc. v. United States*,
  130 Fed. Cl. 522 (2017) ............................................................................................... 7, 8

*SAB Const., Inc. v. United States*,
  66 Fed. Cl. 77 (2005) ..................................................................................................... 19

*San Antonio Hous. Auth. v. United States*,
  143 Fed. Cl. 425 (2019) ................................................................................................. 14

*San Juan City Coll. v. United States*,
  391 F.3d 1357 (Fed. Cir. 2004) ..................................................................................... 14

*Sergent's Mechanical Systems, Inc. v. United States*,
  173 Fed. Cl. 56 (2024) ..................................................................................................... 4

*Smithson v. United States*,
  847 F.2d 791 (Fed. Cir. 1988) ......................................................................................... 7

*Tolliver Grp. v. United States*,
  140 Fed. Cl. 520 (2018) ................................................................................................. 10

*Wells Fargo Bank, N.A. v. United States*,
  88 F.3d 1012 (Fed. Cir. 1996) .................................................................................. 18, 20

*White Buffalo Const., Inc. v. United States*,
  52 Fed. Cl. 1 (2002) ....................................................................................................... 18

*White v. Delta Constr. Int'l v. United States*,
  285 F.3d 1040 (Fed. Cir. 2002) ........................................................................... 16, 17, 19

*Willems Indus. v. United States*,
  295 F.2d 822 (Ct. Cl. 1961) ........................................................................................... 19

iv

## Regulations

2 C.F.R. § 200.211 ................................................................................................................ 2, 9, 10, 11

2 C.F.R. § 200.340 ....................................................................................................................... passim

2 C.F.R. § 3002.10. ..................................................................................................................... 10, 11

FAR 52.236-7 ..................................................................................................................................... 4, 5, 7

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| STATE OF COLORADO; STATE OF MARYLAND; STATE OF MINNESOTA STATE OF HAWAI'I; STATE OF MICHIGAN; STATE OF RHODE ISLAND, | ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 26-315 (Judge Somers) |
| THE UNITED STATES, | ) ) | |
| Defendant. | ) ) | |

**REPLY IN SUPPORT OF DEFENDANT'S
CROSS-MOTION FOR SUMMARY JUDGMENT**

Pursuant to Rule 56 of the Rules of the United States Court of Federal Claims (RCFC), defendant, the United States, respectfully submits this reply brief in further support of its cross-motion for summary judgment with respect to the claims brought by plaintiffs, State of Colorado, State of Maryland, State of Minnesota, State of Hawai'i, State of Michigan, and State of Rhode Island.

## <u>INTRODUCTION</u>

Plaintiffs, recipients of grant agreements awarded by the Department of Homeland Security, Federal Emergency Management Agency (DHS) under the Targeted Violence and Terrorism Prevention (TVTP) grant program, allege that DHS breached their grant agreements by terminating them based upon a determination that the grants no longer effectuated program goals or agency priorities.  As our cross motion explained, we are entitled to summary judgment both on liability and on plaintiffs' damages.  Plaintiffs' response fails to overcome our showing.

With respect to liability, the award incorporated the Uniform Guidance, including 2 C.F.R. § 200.340(a). It did so, inter alia, by providing that grantees "are required to follow the application provisions" of the Uniform Guidance. Plaintiffs' response brief fails to explain how a provision that governs when awards can be terminated is not "applicable" to their performance. And even if section 200.340 were not incorporated into the agreement through the language of the agreement, it is incorporated as a matter of law as a result of the *Christian* doctrine. Plaintiffs' contention that the Uniform Guidance is not binding does not adequately account for the fact that DHS has adopted the Uniform Guidance by regulation. It also ignores the language of 2 C.F.R. § 200.211(c), which makes including the termination provisions of section 200.340 mandatory. And although plaintiffs emphasize the difference between procurement contracts and grants, the same policy rationales that led to the *Christian* doctrine—that is, the Government should have flexibility in ending contracts that require taxpayer money to be paid for services the Government decides it no longer wants—would support applying *Christian* to grant agreements.

With respect to damages, plaintiffs are not entitled to the full value of the grant awards. The grants contemplated only that plaintiffs' costs would be reimbursed, not that they would receive the awards irrespective of what costs were incurred. Separately, plaintiffs fail to address the binding Federal Circuit precedent we rely upon to establish that plaintiffs' damages must be offset against the costs they avoided. Plaintiffs also fail to identify any precedent that supports recovery of the value of the public safety benefits of which the states were allegedly deprived. These alleged speculative, unquantifiable benefits cannot support an award of damages. And finally, plaintiffs are not entitled to either consequential or incidental damages.

The Court should thus grant our motion for summary judgment.

2

## ARGUMENT

### I.    The United States Is Entitled To Summary Judgment On Liability

Our cross-motion explained that the governing grant agreements allowed DHS to terminate the agreements based upon a change in agency priorities.  This is for three separate reasons: first, the agreements incorporated section 200.340 by reference; second, in the alternative, the agreements created a patent ambiguity as to the grounds for termination that plaintiffs failed to raise prior to award; and third, even if the agreements did not explicitly incorporate section 200.340, they incorporated the provision as a matter of law through the *Christian* doctrine.  Gov't Mot. 10-20.  Plaintiffs fail to overcome these arguments.

### A.    The Termination Provisions In Section 200.340—Including The "Agency Priorities" Provision—Were Incorporated By Reference Into The Grant Agreements

As our cross-motion explained, the termination provisions of section 200.340 were incorporated into the grant agreements.  Gov't Mot. 10-13.

The parties' agreement provided that plaintiffs "are required to follow the applicable provisions" of 2 C.F.R. Part 200, which includes section 200.340.  *E.g.*, Pl. Ex. 12 at 2.  It further provides that awardees are required to "ensur[e] overall compliance with the terms and conditions of the award or subaward, as applicable, including the terms of 2 C.F.R. Part 200." *E.g.*, Pl. Ex. 8 at 32.  Our cross-motion explained that under Federal Circuit precedent, the two prerequisites for incorporation by reference are satisfied.  *See* Gov't Mot. 10-13 (quoting *Northrop Grumman Info. Tech. v. United States*, 535 F.3d 1339, 1344 (Fed. Cir. 2008)).  In particular, the incorporation "leave[s] no ambiguity about the identity of the document being referenced, nor any reasonable doubt about the fact that the referenced document is being incorporated into the contract." *Id.* at 1344.  And the only way to enforce the parties' bargains—

3

which effectively give the Government flexibility to terminate awards, while at the same time permitting plaintiffs to recover costs they have incurred in connection with the grants pursuant to an administrative process—is to enforce that incorporation by reference.

Plaintiffs' arguments to the contrary rely upon an unduly narrow conception of incorporation by reference. Courts are not nearly as formalistic as plaintiffs suggest. For example, procurement costs will often include FAR 52.236-7. This provision requires contractors to "comply[ ] with any Federal, State, and municipal laws, codes, and regulations applicable to the performance of the work." *Id.* Both this Court and the Federal Circuit have recognized that FAR 52.236-7—which is far more generic than the incorporating provisions here—has the effect of incorporating by reference "applicable" sources of law. *See, e.g., Geren v. Tecom, Inc.*, 566 F.3d 1037, 1045 (Fed. Cir. 2009); *Bell/Heery v. United States,* 739 F.3d 1324, 1334 (Fed. Cir. 2014); *Sergent's Mechanical Systems, Inc. v. United States*, 173 Fed. Cl. 56, 68 (2024) (finding that FAR 52.236-7 supported Government's position that contract required contractor to comply with OSHA regulations), *aff'd*, 2026 WL 1425220, at \*5 (Fed. Cir. May 21, 2026) (citing FAR 52.236-7 for the proposition that a contractor's "misunderstanding does not excuse failure to meet the obligation imposed by the Contract."). That courts have routinely enforced FAR 52.236-7 rebuts plaintiffs' primary arguments: that the awards' references to the Uniform Guidance are too general to incorporate the Uniform Guidance; and that the inclusion of the adjective "applicable" cuts against the Uniform Guidance being incorporated by reference. *See* Pl. Resp. 5-9.

Plaintiffs also question whether the awards evidence the requisite "intent to incorporate" the Uniform Guidance. Pl. Resp. 8. But the award documents demonstrate the intent to incorporate the Uniform Guidance in essentially the same way that FAR 52.236-7 does, just

4

more specifically: they require plaintiffs to "follow" and "compl[y] with" the "applicable" provisions of the Uniform Guidance. Pl. Ex. 12 at 2; Pl. Ex. 8 at 32. Plaintiffs' argument amounts to a contention that this language is insufficiently "magic[al]," contrary to *Northrup Grumman*'s instruction. *See* 535 F.3d at 1346. Plaintiffs also accuse us of failing to identify any "extrinsic or intrinsic evidence" of intent to incorporate the Uniform Guidance. Pl. Resp. 8. But "[w]hen the contract language is unambiguous, the court's inquiry is at an end and the plain language of the contract is controlling." *Cross Petroleum v. United States*, 51 Fed. Cl. 549, 554 (2002). Accordingly, there is no need for the Court to look to any evidence outside of the four corners of the contract to determine that plaintiffs' performance was subject to section 200.340.

Relatedly, plaintiffs seem to be under the misimpression that incorporations by reference are valid only when the incorporated document is incorporated against both parties. Pl. Resp. 8 (asserting that "*Northop Grumman* requires the government to show that . . . the agency intended to 'bind *itself*' to" the terms set forth in the Uniform Guidance). Plaintiffs do not offer a pincite to justify this proposition, so the basis for their assumption is unclear. *See id.* In fact, nothing prohibits the parties from agreeing to incorporate a document by reference such that it binds only one party to the agreement. Indeed, FAR 52.236-7 does exactly this by making only the contractor responsible for complying with applicable provisions of law.

Plaintiffs assert that they have "consistently agreed that, across the various references, there is a plain intent to bind *grantees* to *applicable* provisions of the Uniform Guidance." Pl. Resp. 7-8. But plaintiffs nowhere explain how a provision explaining when awards can be terminated, such as section 200.340, would not be "applicable" to their performance. In fact, the termination provision at issue here makes plaintiffs' right to perform subject to DHS's right to terminate performance. *See* 2 C.F.R. § 200.340(a). Nor do they adequately account for the fact

that the contract elsewhere requires plaintiff to "ensure overall compliance with the terms and conditions of the award or subaward, as applicable," which the contract defines to include "the terms of 2 C.F.R. Part 200." Pl. Ex. 8 at 32

Plaintiffs also argue again that the fact that the grants identified three narrower bases for termination prevents the agency from relying upon the broader authority set forth in Section 200.340(a). Pl. Resp. 3-5. But, as our motion noted, the governing regulation contemplates this. Section 200.340(a) expressly recognized as two separate bases for termination (a) a determination that an award "no longer effectuates the program goals or agency priorities" and (b) a termination "pursuant to termination provisions included in the Federal award." *Compare* 2 C.F.R. § 200.340(a)(2) *with id.* § 200.340(a)(5).[1] This supports the view that, even as an award might call attention to specific bases for termination, termination would also be authorized upon the separate ground that an award "no longer effectuates the program goals or agency priorities[.]" Plaintiffs read the awards as identifying the only three instances in which agencies can (but are not required to) terminate the award. But, as our motion pointed out, the award does not use the modifier "only," or another limiting word, that would support that reading. Because the contract incorporates the Uniform Guidance, plaintiffs cannot show that the three identified grounds for termination in the award prevent DHS from relying upon the grounds identified in section 200.340.

Plaintiffs' reliance on district court cases is misplaced. Plaintiffs ask the Court to follow the lead of *MTA v. Duffy*. *Metro. Transp. Auth. v. Duffy*, 25-cv-1413, 2026 WL 588117, at *8 (S.D.N.Y. Mar. 3, 2026); *see also id.*, 784 F.Supp.3d 624, 669 (S.D.N.Y. 2025). As our cross-

---

[1] As in our cross-motion, unless otherwise noted, any citations to section 200.340 are to the version in effect between 2020 and 2024, which is the version applicable to the awards at issue here. *See* Gov't Mot. 8 n.3.

motion explained, this decision is currently on appeal.  *See id.*, *appeal docketed*, No. 26-1213 (2d. Cir. May 4, 2026).  Moreover, the case considered a different version of section 200.340, and a different incorporation-by-reference mechanism.  It is neither binding nor persuasive authority.   Similarly unhelpful to plaintiffs is *New Jersey v. United States Office of Management and Budget*, Civil Action No. 1:25-cv-11816-IT, 2026 WL 2069832, at *15 (D.Mass. July 17, 2026), which also considered a different version of section 200.340, and is also subject to appeal. And it answered a different question than the one that the parties agreed to address in this round of briefing.  *See* Pl. Resp. 2 (acknowledging that parties did not ask Court to address whether termination amounted to a breach).  It is thus irrelevant to the questions before this Court.

Plaintiffs also rely upon a series of cases, *see Smithson v. United States,* 847 F.2d 791, 794 (Fed. Cir. 1988); *Precision Pine & Timber, Inc. v. United States*, 596 F.3d 817, 826 (Fed. Cir. 2010); *Public Housing Auth. Directors Assoc. v. United States*, 130 Fed. Cl. 522, 535 (2017), but none help their cause.  *See* Pl. Resp. 7.  To be sure, as these cases recognize, contracts can cite regulations without incorporating them into the contract.  But the analysis turns on the specific language used in the contract.  As we explained above, the closest analogy is FAR 52.236-7, which courts have routinely enforced.  By contrast, the cases relied upon by plaintiffs feature provisions with language that cuts against incorporation.  For instance, in *Smithson*, the Court read the phrase "subject to" as indicating that other contractual provisions would be invalid if they were inconsistent with FmHA's regulations.  847 F.2d at 794.  This was an interpretation of that language in the context of that agreement which has no bearing upon the incorporating provision in plaintiffs' agreement, which does not use analogous language. *Precision Pine* considered whether the contract's language incorporated the entire Endangered Species Act (ESA).  596 F.3d at 826.  The Court held that "the contract's passing reference to the

7

entire corpus of the ESA—itself a complex set of statutory provisions—did not automatically result in wholesale incorporation of that statute." *Id.* (cleaned up).  Among other differences, the contractual language in *Precision Pine*, unlike the language here, did not require either party to "follow" or "compl[y] with" any regulations.  And *Public Housing Authority Directors Association* considered the effect of an appropriations statute, enacted after the parties executed the governing agreement, that conflicted with regulations which were incorporated into the agreement.  130 Fed. Cl. at 535.  No such conflict is present here.

Plaintiffs also rely upon excerpts from manuals issued by FEMA to address the administration of preparedness grants.  Pl. Resp. Br. 4; Pl. Ex. 28-30.  Plaintiffs point to language from the manual that tracks the three bases for termination contained in the NOFOs. *See id.*  Their legal basis for relying upon this language is unclear, but they seem to be contending that the manual's language somehow suggests that the section 200.340 was not incorporated into the parties' agreements.  But the manuals were subject to the requirement that awardees comply with the Uniform Guidance.  For instance, a foreword to the 2024 grant manual expressly reiterates the requirement that grantees must comply with the Uniform Guidance: "All recipients and subrecipients of FEMA grants must comply with all applicable requirements of the Uniform Administrative Requirements, Cost Principles, and Audit Requirements for Federal Awards located at 2 C.F.R. Part 200."[2]  The manuals do not alter the parties' agreement.

---

[2] *See* Federal Emergency Management Agency, Preparedness Grants Manual FM-207-23-001 (April 2024), *available at* https://cdn-assets.fedwebplatform.org/fed-110/2/FFY2024%2520FEMA%2520Preparedness%2520Grants%2520Manual.pdf (last accessed Aug. 8, 2026).

Finally, plaintiffs argue that DHS failed to "clearly and unambiguously" incorporate section 200.340(a) into the grant agreements, as is required by section 200.340(b).  Pl. Resp. 16. In fact, DHS complied with section 200.340(b)'s requirement by incorporating the Uniform Guidance by reference, which is explicitly allowed by section 200.211(c)(1).  *See* Gov't Mot. 18. In any event, as our cross motion explained, plaintiffs' presumption that the Uniform Guidance was incorporated against DHS lacks a textual basis.  Gov't Mot. 18-19.  Plaintiffs are thus conflating contractual requirements (which they have standing to enforce) with regulatory requirements (which they do not).  *Cf. AT&T v. United States*, 177 F.3d 1368, 1373-75 (Fed. Cir. 1999) (en banc).

Alternatively, our cross-motion explained, plaintiffs have at best identified a patent ambiguity in the award documents.  Gov't Mot. 17-18.  Under this reading, the grant agreements "contain[] facially inconsistent provisions" regarding when grantees can be terminated: the NOFO lists three possible termination grounds, while the Uniform Guidance lists five.  *See Blue Tech Inc. v. United States*, 155 Fed. Cl. 229, 238 (2021) (cleaned up).  And "[i]f a patent ambiguity is found in a contract, the contractor has a duty to inquire of the contracting officer . . . ."  *Newsom v. United States*, 676 F.2d 647, 649 (Ct. Cl. 1982).

Plaintiffs respond that each reasonably believed that the agreement limited termination to the grounds identified in the NOFO.  Pl. Resp. 16-17.  But "the existence of a patent ambiguity in the contract raises the duty of inquiry, regardless of the reasonableness of the contractor's interpretation."  *Fortec Constructors v. United States*, 760 F.2d 1288, 1291 (Fed. Cir. 1985). Thus, if the Court finds a patent ambiguity in the grant as to the permissible terminations bases, plaintiffs cannot rely upon subjective interpretations to escape their duty to inquire.  *See id.*

9

**B.      Alternatively, Section 200.340's Termination Provisions Are Incorporated As A Matter of Law Via The *Christian* Doctrine**

Even if the Court concludes that the references in the grant agreements are insufficient to incorporate by reference the termination provisions at section 200.340, the termination provisions in section 200.340 are incorporated as a matter of law through the *Christian* doctrine.

Under the *Christian* doctrine, "a mandatory contract clause that expresses a significant or deeply ingrained strand of procurement policy is considered to be included in the contract by operation of law." *Tolliver Grp. v. United States*, 140 Fed. Cl. 520, 529 (2018) (quoting *S.J. Amoroso Constr. Co. v. United States*, 12 F.3d 1072, 1075 (Fed. Cir. 1993)). As our cross-motion demonstrated, both *Christian* criteria are satisfied here. Gov't Mot. 14-16. First, it is mandatory that grants contain the termination provisions set forth in section 200.340. *See* 2 C.F.R. § 200.211(c)(1)(v). DHS expressly adopted the Uniform Guidance, giving it "regulatory effect[.]" *See* 2 C.F.R. § 3002.10. Second, this provision "expresses a significant or deeply ingrained strand" of policy that has long guided the Government's contracting authority. Gov't Mot. 15. In particular, it expresses the view that the Government should have flexibility in ending contracts that no longer serve the Government's policy interests. *See G. L. Christian and Assocs. v. United States*, 312 F.2d 418, 426 (Ct. Cl. 1963).

In response, plaintiffs focus heavily on the differences between grants and other types of agreements, as reflected in the Federal Grant and Cooperative Agreement Act. Pl. Resp. 10-12. Our motion also recognized these distinctions. Gov't Mot. 15-16. But plaintiffs fail to demonstrate why these differences should be read back into *Christian* itself, which was decided decades before the statute plaintiffs rely upon. *Compare* Gov't Mot. 15-16 *with* Pl. Resp. 12-14.

Plaintiffs' primary argument is that, while the FAR is mandatory, compliance with the Uniform Guidance is not. Pl. Resp. 12-14. But this argument has no force here, where DHS has

10

expressly adopted the Uniform Guidance as mandatory in its own regulations and given it "regulatory effect[.]" *See* 2 C.F.R. § 3002.10.  Indeed, plaintiffs barely engage with our argument for why, in light of the DHS regulation and the plain language of 2 C.F.R. § 200.211(c)(1)(v), DHS was required to include section 200.340 in the grant agreement.

Plaintiffs also contend that we are relying upon a policy that has "no historic roots."  Pl. Resp. 13.  But this ignores that the ability to terminate contracts based on changed circumstances, particularly where those changed circumstances relate to the Government's needs, is simply another manifestation of the same policy that motivated *Christian*: the principle that the Government should not have to continue paying for that which it decides that it no longer needs.  *See G. L. Christian and Assocs.*, 312 F.2d at 426.  This principle is just as applicable to grant agreements, which are particularly closely intertwined with policy considerations.  *Cf. Bennett v. Kentucky Dept. of Educ.*, 470 U.S. 656, 669 (1985) ("Unlike normal contractual undertakings, federal grant programs originate in and remain governed by statutory provisions expressing the judgment of Congress concerning desirable public policy.").

Plaintiffs further cursorily raise an argument about "implications" of "constitutional weight and dimension."  Pl. Resp. 14-15 (discussing *Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1, 17 (1981)).  But the discussion of Congress's spending power in *Pennhurst* is inapplicable to this case, which does not implicate the spending power at all.  Further, plaintiffs here are not subject to anything like the "impos[ition of] *affirmative* obligations on the States to fund certain services," resulting in "massive financial obligations," as *Pennhurst* considered.  *Id.* at 16-17.  Rather, the governing principle here is that, once plaintiffs entered contracts with the United States, they were subjecting themselves to the law governing contracts with the Federal Government, including the *Christian* doctrine.  Gov't Mot. 14-16.

11

Thus, even if the Court concludes that the "agency priorities" language in the Uniform Guidance was not incorporated into the grant agreements based upon the agreement's language, it should conclude that the language was incorporated into the agreement as a matter of law.

**C.      Should The Court Agree That Section 200.340 Was Incorporated Into The Agreements, The Court Should Enter Judgment As To Count I**

Although plaintiffs assert that we are improperly seeking summary judgment on the entire case, Pl. Resp. 2-3, our liability argument in fact asks only that the Court limit Count I to the alleged denial of close-out costs submitted by plaintiffs.

First, we are not seeking summary judgment as to plaintiffs' claims regarding the denial of close-out costs that they have submitted to the United States.  Gov't Mot. 9.

Second, apart from the alleged denial of close-out costs, Count I is entirely predicated upon plaintiffs' contention that section 200.340 was not validly incorporated into the parties' agreement.  Compl. ¶ 82-95.  Thus, although plaintiffs may not seek summary judgment on Count I, a consequence of granting our summary judgment motion would be to remove Count I's legal predicate.  Further, contrary to plaintiffs' argument, Pl. Resp. 2-3, the complaint does not allege plausibly allege that DHS's reasons for terminating were different from its stated reasons. *Compare* Compl. ¶ 72 (alleging that "the President has threatened repeatedly to punish so-called 'sanctuary' jurisdictions through the calculated withholding and termination of federal funding.") *with* Compl., Ex. 15-21 (referencing "funding of projects within sanctuary jurisdictions that blatantly disregarded federal immigration law.").  Moreover, although plaintiffs allege that they complied with the grants' terms, Compl. ¶¶ 41-43, 69, the termination notices did not allege noncompliance with the grants' terms.  Compl., Ex. 15-21; Compl. ¶ 68.  Plaintiffs thus have not alleged a disconnect between the stated reasons for termination and the actual reasons, as would state a valid pretext claim.  *See Patterson v. McLean Credit Union*, 491 U.S. 164, 187 (1989),

12

*superseded by statute* (explaining that pretextual decision is one where "respondent's proffered reasons for its decision were not its true reasons.").

Ruling in our favor on Count I would substantially undermine Count II as well. Count II is also largely predicated upon the assertion that section 200.340 was not incorporated into the awards. *See, e.g.,* Compl. ¶ 106. And the "implied duty of good faith and fair dealing cannot expand a party's contractual duties beyond those in the express contract or create duties inconsistent with the contract's provisions." *Precision Pine,* 596 F.3d at 831. That said, plaintiffs' complaint does appear to allege other factual bases for their good-faith-and-fair-dealing claim. See Compl. ¶¶ 96-109. We thus are not seeking summary judgment on Count II.[3]

## II. The United States Is Entitled To Summary Judgment With Respect To Plaintiffs' Alleged Damages

As our cross motion explained, even if the Court does not grant summary judgment regarding liability, it should grant summary judgment as to plaintiffs' claimed damages.

### A. Plaintiffs' View Of Their Expectation Interests Is Based Upon A Misunderstanding Of The Grant Agreements

First, as our cross motion explained, plaintiffs' expectations did not extend beyond the reimbursement of validly incurred costs. Gov't Mot. 21-24.

At the outset, we note that, apart from the cost claims submitted through the close-out procedures, about which neither party is seeking summary judgment, *see* Pl. Resp. 23, plaintiffs are not seeking damages for any costs they actually incurred. Although they have much to say about mitigation, Pl. Resp. 26-29, they acknowledge that they are not seeking costs incurred after termination. Pl. Resp. 28 n.6. Accordingly, these summary judgment motions present squarely

---

[3] That said, all damages arguments we make apply to both Count I and Count II.

the question of whether plaintiffs can recover for costs that they did not incur under a cost-reimbursement type contract.

On this question, the analysis is straightforward.  As our cross-motion explained, the only monetary promise in the grant agreements is to reimburse costs incurred by the grantees to the extent that they are allowable, reasonable, and allocable under the Uniform Guidance.  Gov't Mot. 21-23.  Indeed, allowing plaintiffs to recover for non-incurred costs would impermissibly place plaintiffs "in a better position" than if the grant agreements had not been terminated. *Bluebonnet Sav. Bank, F.S.B. v. United States*, 339 F.3d 1341, 1345 (Fed. Cir. 2003).

The cases relied upon by plaintiffs, Pl. Resp. 20, do not advance their cause.  Two cases simply establish that a breach of grant can give rise to "whatever damages [plaintiff] is entitled to receive." *San Juan City Coll. v. United States*, 391 F.3d 1357, 1361 (Fed. Cir. 2004); *see also San Antonio Hous. Auth. v. United States*, 143 Fed. Cl. 425, 440 (2019).  These cases are entirely consistent with our argument here: while plaintiffs can recover damages from a breach of a grant agreement, their recovery is subject to traditional damages principles.  *See id.*  The two non-binding, out-of-jurisdiction cases cited by plaintiffs are no more helpful to their position.  In one case, although the discussion is underdeveloped, it appears that the plaintiff there (unlike plaintiffs here) was seeking costs he actually incurred.  *See Hoskins v. State of La.*, 273 So.3d 323, 326 (La. App. Ct. 2019) ("The amount of a grant was calculated by deducting from the homeowner's total project costs (using actual costs for eligible expenses) any duplication of benefits the homeowner had already received from FEMA or Road Home programs, flood insurance, hazard insurance, or any other sources.").  Another involved a suit between an applicant for a grant and a third-party-software provider (not a grantor and a grantee) that allegedly deprived the applicant of a likely grant award.  *Marquette Univ. v. Kuali*, 584

14

F.Supp.3d 720, 723 (E.D. Wis. 2022). The magistrate judge's short analysis regarding damages did not consider the principle that any damage award must account for avoided costs and, even as it concluded that issues of fact relating to damages remained, dismissed the suit on other grounds, rendering the damages discussion dicta. *See id.*

Contrary to plaintiffs' contention, there is also no disconnect between our argument here and the arguments we have made in district court when other plaintiffs, under other grant agreements, have sued under the Administrative Procedure Act. *See* Pl. Resp. 24. As we have maintained, to the extent that plaintiffs are seeking monetary damages, this Court is the proper forum for such claims. *See id.* (citing assertions in various Government briefs). And we have not challenged this Court's jurisdiction to entertain plaintiffs' claim. But the United States has never guaranteed that plaintiffs in any particular case (much less plaintiffs here) would be able to show that they are entitled to damages under the governing law.

The Court should reject plaintiffs' attempt to make their legal position more palatable by positing a hypothetical to substitute for the terms of the contract here. Plaintiffs contend that, if Bob agreed to pay Joe for 100 hours of services, and then terminated the contract after only 10 hours, Joe would be entitled to recover for the remaining 90 hours. Pl. Resp. 24. As we noted in our opening brief, such a repudiation by Bob would give rise to a duty to mitigate by Joe. Gov't Mot. 24-25. Even setting that aside, and assuming that this oversimplified hypothetical is otherwise correct, plaintiffs' hypothetical addresses a contract predicated on payment for services, not cost reimbursement. The parties here entered a different agreement: the United States agreed only to reimburse plaintiffs' incurred, valid costs. Gov't Mot. 21-24.

Plaintiffs thus cannot recover damages for costs that they did not incur.

15

**B.      Even If Plaintiffs Are Correct About Their Expectation Interests, Their Damages Must Be Offset By The Costs Avoided As A Result Of The Terminations**

As an independent basis for rejecting plaintiffs' damages theory, the Court should conclude that plaintiffs' damages must be offset against the costs they have avoided.

Plaintiffs' response brief has a glaring hole.  Even as it accuses the Government of failing to cite caselaw in support of its damages theory, Pl. Resp. 20, the brief fails to respond to the binding precedent upon which we rely.  Our cross-motion explained that, under the Federal Circuit's precedent, plaintiffs' damages must be offset to account for any costs avoided by the breach.  Gov't Mot. 23, 25-28; *White v. Delta Constr. Int'l v. United States*, 285 F.3d 1040, 1043 (Fed. Cir. 2002).  Strikingly, plaintiffs have no response whatsoever to this line of authority, which binds the Court.  They do not cite *White* and do not account for the principle it articulates.  Moreover, even as they rely upon *Boaz Housing Authority v. United States*, 994 F.3d 1359, 1368 (Fed. Cir. 2021), they fail to mention that *Boaz* explicitly made its holding subject to the principles articulated in *White*.  *Compare* Pl. Resp. 27-28 *with* 994 F.3d at 1370 n.7 (citing *White*, 285 F.3d at 1043, to emphasize that the decision did not displace established damages principles).  Plaintiffs are subject to the principle that any damages calculation must account for all consequences of the breach, including the avoided costs.

The Court can thus accept the arguments made in plaintiffs' response brief and still rule in favor of our damages position.  The Court can agree with plaintiffs that, first, plaintiffs' damages should be measured by their expectations at the time of the agreement; second, agree that they expected to recover the full face value of the grant; and third, credit plaintiff's assertion that the public-safety benefits are not speculative.  Even if the Court were to accept all these premises, the Court is still bound by *White*.  And *White*'s application here is uncontested:

16

plaintiffs must reduce their damages by the costs they avoided (which, because of the structure of these agreements, would entirely negate plaintiffs' damages claim except for the costs submitted through the close-out process). *See* 285 F.3d at 1043.

Unable or unwilling to respond to our reliance upon *White*, plaintiffs argue that our arguments would have unfair consequences. They argue that (a) our arguments would mean that there is no difference between a proper termination and an improper termination and (b) we would effectively be inserting a termination for convenience option into grant documents. Needless to say, this Court is bound by *White* and cannot ignore it because of the consequences of applying its holding. Even setting that aside, the rule recognized in *White* vindicates important policy considerations. In particular, it recognizes that any accounting of plaintiffs' damages must account for benefits that plaintiffs have obtained through the breach. *White*, 285 F.3d at 1043. Any other rule would put plaintiff in a better position from the breach than they otherwise would be, which is not allowed. *See id.*

This does not render the agreement "illusory," contrary to plaintiffs' suggestion. Pl. Resp. 19. Rather, it means that the benefit to plaintiffs is that, while the agreement was in effect, plaintiffs could incur costs with the assurance that they would be reimbursed so long as the costs are reimbursable under the principles recognized in the Uniform Guidance. This, contrary to plaintiffs' suggestion, Pl. Resp. 21, is a "thing of value" to them. At the same time, this "thing of value" is subject to the language of the grant, which limits the United States' obligations to the reimbursement of valid costs, and also to established principles governing damages calculations. Plaintiffs' reliance on the statutory definition of a grant, Pl. Resp. 21, is thus misplaced.

It is not "absurd," Pl. Resp. 21, 22, 25, to conclude that plaintiffs are not entitled to their claimed damages for the allegedly "wrongful," Pl. Resp. 23, 24, 29, actions of DHS. "Of course,

17

not every injury resulting from a breach of contract is remediable in damages." *Wells Fargo Bank, N.A. v. United States*, 88 F.3d 1012, 1022 (Fed. Cir. 1996). Rather than reflexively awarding damages, courts apply the tried-and-true principles of damages calculations, which look to the effect of the breach on plaintiff, both positive and negative. The closest analogy— termination of a contract governed by the FAR—shows that the outcome for which we are advocating is not anomalous. *See Bowman Constr. Co. v. United States*, 154 Fed. Cl. 127, 141 (2021) (explaining that the remedy for an improper default termination is a conversion to a convenience termination); *see also White Buffalo Const., Inc. v. United States*, 52 Fed. Cl. 1, 4 (2002) (explaining that a termination for convenience results in a fixed-price contract being "essentially converted into a cost reimbursement contract.").

Notably, when plaintiffs cannot establish expectation damages with reasonable certainty, they can seek reliance damages, which are intended to restore them to the status quo ante. *See Glendale Federal Bank, FSB v. United States*, 239 F.3d 1374, 1382-83 (Fed. Cir. 2001). Plaintiffs here do not seek reliance damages, likely because the grants themselves allow plaintiffs to submit their close-out costs and thus restore plaintiffs to the status quo ante. *See* Gov't Mot. 9. That plaintiffs are not seeking reliance damages undermines their suggestion that our arguments are unfair to them.

Plaintiffs will have every opportunity to attempt to persuade the Federal Circuit that it would be unfair to apply the rule set forth in *White* to their situation. Because plaintiffs do not even attempt to distinguish *White*, this Court is bound to apply its rule.

C.    **Plaintiffs' Damages—Which Seek Compensation For Purported Public Safety Benefits—Are Speculative**

As an independent basis for granting summary judgment, plaintiffs' damages are speculative and thus not recoverable. Gov't Mot. 25-26.

Plaintiffs identify the value of the agreement as "the grants' public safety objectives."  Pl. Resp. 18.  They then contend that "the most reasonable measure" of "[t]ranslating that value to a dollar figure" is "the total amount of the grant award."  *Id.*  They identify this as "the most concrete place to start" because "it represents a meeting of the minds about how much funding to spend in service of each program's objectives."  *Id.*  As we explained above, even if plaintiffs were correct that this represents "the starting point from all other calculations should flow," the next step is to offset their damages by the amount of costs they avoided as a result of the breach. *See White*, 285 F.3d at 1043.

Even setting this aside, plaintiffs cannot meet the burden of quantifying their damages with "sufficient certainty[.]"  *See Willems Indus. v. United States*, 295 F.2d 822, 831 (Ct. Cl. 1961).  Plaintiffs do not identify with any specificity what public safety benefits would have been obtained, but were not, as a result of the Government's breach.  Plaintiffs further fail to cite any cases concluding that unquantifiable harms comparable to the alleged loss of public safety benefits are recoverable in damages.  Given the inchoate nature of the harms they have identified, plaintiffs cannot recover here.  *See SAB Const., Inc. v. United States*, 66 Fed. Cl. 77, 87 (2005) (concluding that, where Government's actions caused asbestos exposure, plaintiff's claims for costs of self-insurance were "too remote and speculative to support any recovery, as matter of law").

Plaintiffs' only real argument in response to our showing that they are seeking speculative damages is that the contract's price terms should be used to quantify the value of the allegedly foregone public safety benefits because the parties agreed to these amounts.  Pl. Resp. 25-26.  This confuses avoided costs with recoverable damages.  *See* Gov't Mot. 27-28.  That the United States agreed to reimburse valid costs up to a particular amount does not mean that

19

plaintiffs are relieved of the burden of quantifying their harm. The amount of the grant was a function of the amount appropriated by Congress. And the benefits of the grants were intended to redound to the country generally, not specifically to plaintiff states. Ultimately, plaintiffs fail to identify any language in the award documents indicating that the amount of their awards reflected a joint attempt to quantify the value to plaintiffs of the grant agreements.

The Court should thus reject plaintiffs' damages theory.

### D.    Plaintiffs Cannot Recover Any Consequential Damages Or Incidental Damages Apart From Those Compensable Under The Uniform Guidance

Plaintiffs have not undermined our showing that we are entitled to summary judgment on the consequential damages and incidental damages plaintiffs have threatened. Gov't Mot. 28-30.

First, as our motion explained, binding precedent prevents plaintiffs from recovering consequential damages. *See Wells Fargo*, 88 F.3d at 1021. Plaintiffs respond that *Wells Fargo* did not use the word "never." *Compare id. with* Pl. Resp. 29. But the Federal Circuit has the same reading of *Wells Fargo* as we do. *See Precision Pine*, 596 F.3d at 834 (characterizing *Wells Fargo* as "holding that remote and consequential damages are not recoverable.")). Consequential damages are unavailable.

Incidental damages are similarly unrecoverable here. As our cross-motion explained, because plaintiffs have submitted claims through the close-out process for termination-related costs, they are not entitled to the double recovery that would result from the recovery of incidental damages. Pl. Resp. 29-30. Plaintiffs fail to rebut our showing.

### CONCLUSION

For these reasons, and those stated in our cross motion, we respectfully request that the Court grant summary judgment in favor of the United States and deny plaintiffs' motion.

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General

PATRICIA M. McCARTHY
Director

MARTIN F. HOCKEY, JR.
Deputy Director

s/ Matthew J. Carhart
MATTHEW J. CARHART
Senior Trial Counsel
Commercial Litigation Branch, Civil Division
U.S. Department of Justice
P.O. Box 480, Ben Franklin Station
Washington, DC 20044
Telephone: (202) 307-0313
Email: Matthew.Carhart@usdoj.gov

August 11, 2026                    Attorneys for Defendant

21